MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
Richard M. Simins
rsimins@mmwr.com
Jeremy Mishkin
jmishkin@mmwr.com
437 Madison Avenue, 24th Floor
New York, NY 10022
Telephone: (212) 867-9500

COHEN & GRESSER LLP
S. Gale Dick
sgdick@cohengresser.com
Alexandra K. Theobald
atheobald@cohengresser.com
800 Third Avenue
New York, New York 10022
Telephone: (212) 957 7600

LEWIS & LLEWELLYN LLP
Marc R. Lewis (SBN 233306)
mlewis@lewisllewellyn.com
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 800-0590

Attorneys for Non-Party
SAMUEL BANKMAN-FRIED

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. |
| Rule 45 Subpoena to Non-Party Samuel Bankman-Fried | **NON-PARTY SAMUEL BANKMAN-FRIED'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** |

Samuel Bankman-Fried ("Mr. Bankman-Fried"), respectfully moves this Court, pursuant to the Federal Rules of Bankruptcy Procedure Rules 9014 and 9016 and Federal Rule of Civil Procedure ("FRCP") 45 for an order quashing the Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena" (attached as Exhibit A)) purportedly served by Official Committee of Unsecured Creditors (the "UCC") in *In re Voyager Digital Holdings Inc. et al*. currently pending before the United States Bankruptcy Court in the Southern District of New York, Case No. 22-10943 (the "Voyager Bankruptcy"), on Mr. Bankman-Fried, on February 16, 2023, or, in the alternative, respectfully moves this Court for a Protective Order pursuant to Rule 26(c).

## PRELIMINARY STATEMENT

1.        The Subpoena is procedurally defective in multiple ways.  First, the Subpoena was not properly served on Mr. Bankman-Fried, the witness, and the UCC failed to tender the mandated witness fees as required by FRCP 45(b)(1).  Second, the Subpoena is untimely and unreasonable, as it was served only four business days before the date of the testimony demanded and one full business day before the accompanying documents were requested for production.  Third, compliance with the document requests in the Subpoena would implicate Mr. Bankman-Fried's Fifth Amendment right against self-incrimination under the Act of Production doctrine.  As is well known, Mr. Bankman-Fried is a defendant in *United States v. Bankman-Fried*¸ No. 22-cr-673-LAK (S.D.N.Y.) (the "Criminal Case").  Fourth, the requests for documents for production are, inter alia, overbroad in scope and unduly burdensome and would implicate Mr. Bankman-Fried's Fifth Amendment rights if he were required to comply.  For these reasons, the Subpoena should be quashed.

## BACKGROUND

2.        On July 5, 2022, Voyager Digital Holdings, Inc. and other affiliated debtors (the "Voyager Debtors"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York. Mr. Bankman-Fried is a non-party to the Voyager Contested Matter.

1

3.      On October 3, 2022, Alameda Research Ventures LLC ("Alameda") filed three proofs of claim (Claim Nos. 11206, 11209 and 11213) in the Voyager Bankruptcy.

4.      On January 30, 2023, the Voyager Debtors filed Debtors' Objection To Proofs Of Claim Nos. 11206, 11209 & 11213 Of Alameda Ventures Ltd. [Dkt 929] and on January 31, 2013, the UCC filed an Objection Of The Official Committee Of Unsecured Creditors To Proofs Of Claim Nos. 11206, 11209, And 11213 [Dkt 936], thereby creating a contested matter (the "Voyager Contested Matter"). Mr. Bankman-Fried is a non-party to the Voyager Contested Matter.

5.      On February 16, 2023, the UCC purported to serve a Subpoena to Appear and Testify at a Hearing or Trial in a Bankruptcy Case (or Adversary Proceeding) on non-party Mr. Bankman-Fried by leaving the Subpoena with his mother, Barbara Fried, at Mr. Bankman-Fried's parents' home in California.  Moreover, there were no witness fees tendered along with the Subpoena.  Mr. Bankman-Fried was not present at the home at the time, because he was attending a hearing in the Criminal Case regarding the conditions of his bail (the "Bail Conditions").

6.      The Subpoena purports to require Mr. Bankman-Fried to appear in person at the San Francisco offices of McDermott Will & Emery LLP to testify on February 23, 2023.  The Subpoena also includes forty-nine (49) separate and extremely wide-ranging document requests and called for them to be produced by February 20, 2023, a mere two business days after purported service as well as a federal holiday.

7.      Mr. Bankman-Fried, through counsel, attempted to reach out to counsel for the UCC on February 17, 2023, by phone and through email.  Despite leaving a voicemail and sending at least three emails to the UCC's counsel, counsel for Mr. Bankman-Fried received no response from counsel for the UCC until February 21, 2023.  Counsel for the UCC conveyed that they were currently in negotiations with counsel for FTX/Alameda "concerning a deal in which discovery would be delayed, which includes the [Subpoena]."  Despite attempts to confirm with counsel for the UCC that the return dates in the Subpoena are moved back or adjourned for the time being, no such assurances were given.  Considering that the UCC provided Mr. Bankman-Fried with only one business days in which to produce documents responsive to the Subpoena, Mr. Bankman-Fried had no choice but to seek relief from the Court.

# I.      ARGUMENT

## A.      The Subpoena Should Be Quashed Because it is Procedurally Deficient

8.      The Subpoena should be quashed because it fails to comply with multiple procedural requirements of Rule 45.  When a subpoena has not been properly served or does not otherwise fulfill the requirements of Rule 45, the subpoena must be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(i)–(iv); *See Fujkura Ltd. v. Finisar Corp.*, Civ. A. No. 15 mc 80110-HRL (JSC), 2015 WL 5782351, at *5 (N.D. Cal. Oct. 5, 2015).  The Subpoena is defective because, among other things, (i) it was  not personally served on Mr. Bankman-Fried, the witness to be summoned, (ii) it does not provide reasonable time for compliance, and (iii) the UCC failed to profer the attendance and travel fee required under FRCP 45(b)(1).

9.      First, the Subpoena should be quashed because it was not personally delivered to Mr. Bankman-Fried as required under Rule 45(b)(1), which provides "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person."  *Fujikura Ltd.*, 2015 WL 5782351, at *5 ("The majority of courts understand "delivering" to require personal service of the subpoena"); *Rijhwani v. Wells Fargo Home Mortg., Inc*., No. C 13-05881 LB, 2015 WL 848554, at *4 (N.D. Cal. Jan. 28, 2015) ("Rule 45 requires a subpoena to be "delivered" to the named person, and most courts have interpreted that word to require personal service*."); Prescott v. Cnty. of Stanislaus*, No. 10 cv 00592 (JLT), 2012 WL 10617, at *3 (E.D. Cal. Jan. 3, 2012) ("Personal service of a deposition subpoena is required by Fed.R.Civ.P. 45(b)(1)."); *see also* § 2454 Service of a Subpoena, 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.").

10.      The UCC purports to have served the Subpoena on Mr. Bankman-Fried by leaving the Subpoena in the possession of Mr. Bankman-Fried's mother, Barbara Fried, at the California Address.  It is indisputable that on February 16, 2023, the date the Subpoena was supposedly served at the California Address, Mr. Bankman-Fried was attending a hearing before Judge Kaplan in the United States District Court for the Southern District of New York.  Leaving the Subpoena in the possession of Barbara Fried does not satisfy the Rule's requirement for personal service on Mr. Bankman-Fried.  Substitute service is generally not permitted to serve a Rule 45 subpoena. Fujikura

3

1   Ltd., 2015 WL 5782351, at *7 ("[S]ubstitute service in lieu of personal delivery—is generally not

2   permitted to serve a Rule 45 subpoena.").  Therefore, the Subpoena was not properly served on Mr.

3   Bankman-Fried, and should be quashed for this reason alone.

4        11.        Second, the notice provided to Mr. Bankman-Fried was manifestly inadequate and

5   unreasonable.  The Subpoena was improperly served as to Mr. Bankman-Fried only four business

6   days before February 23, 2023, the date he would be required to appear to testify, and only one

7   business day before February 20, 2023, the date he would be required to produce documents,

8   including forty-nine (49) separate, extremely overbroad and unduly burdensome documents

9   requests.  More specifically, the Subpoena was purportedly served on the Thursday before a long

10  holiday weekend and purported to require document production on a federal holiday and testimony

11  the day after.  Counsel for the serving party did not respond to repeated requests to meet and confer

12  before or after the weekend began – effectively requiring Mr. Bankman-Fried to prepare motion

13  papers relating to a blatantly deficient subpoena.

14       12.        A court "must quash or modify a subpoena that … fails to allow a reasonable time to

15  comply."  Fed. R. Civ. P. 45(d)(3)(a)(i); *HI.Q, Inc. v. ZeetoGroup, LLC*, Civ. A. No. MC 22 cv

16  1440-LL (MDD), 2022 WL 17345784, at *6 (S.D. Cal. Nov. 29, 2022). *Black v. Wrigley*, No. 18 cv

17  2367 (GPC) (BGS), 2019 WL 1877070, at *5 (S.D. Cal. Apr. 26, 2019) ("The service of the

18  subpoena here violated Fed. R. Civ. P. 45(d)(3)(A)(i) in that it failed to allow [non-party] a

19  reasonable time to comply and therefore it must be quashed."); *City of Pomona v. Cont'l Ins. Co*.,

20  No. 07 cv 7703 (ODW) (PLAx), 2008 WL 11343060, at *1 (C.D. Cal. Dec. 17, 2008) (finding

21  issuer failed to comply with Rule 45(c)(3)(A)(i) by issuing the subpoena only three days in advance

22  of the date of the document production).

23       13.        Here, the time frame for compliance is presumptively unreasonable, particularly as to

24  a third party.  *See, e.g., AngioScore, Inc. v. TriReme Medical, Inc*., No. 12 cv 03393 (YGR), 2014

25  WL 6706898 at *1 n. 1(N.D. Cal. Nov. 15, 2014) (requiring compliance with a subpoena within nine

26  days is unreasonable); *Littlefield v. NutriBullet, L.L.C*., No. 16 cv 6894 (MWF), 2018 WL 5264148

27  at *2 (C.D. Cal. Jan. 22, 2018) (production deadline merely eight days after service on nonparty was

28  unreasonable); *Arminak v. Arminak & Associates, LLC*, No. 16 cv 3382 (JAK), 2017 WL 10403032

4

1    at *3 (C.D. Cal. May 23, 2017) (noting that "[w]hile the Rule does not specify what constitutes a

2    reasonable amount of time, courts often require at least ten days' notice").

3          14.    In addition, proper service of a subpoena requires "tendering the fees for 1 day's

4    attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1).  Failure to tender these fees at

5    the time of service renders the subpoena invalid and the deposition testimony cannot be compelled.

6    *Wallis v. Centennial Ins. Co.*, No. 08 cv 2558 (WBS) (AC), 2013 WL 434441, at *4 (E.D. Cal. Feb.

7    1, 2013) (quashing deposition subpoena where plaintiff failed to tender requisite witness fees until

8    after service (citation omitted); *see also CF & I Steel Corp v. Mitsui & Co.*, 713 F.2d 494, 495 (9th

9    Cir. 1983) (finding tender of fees 34 days after service and one week after notice of deficiency could

10   not cure defect); *Mirana v. Battery TaiShing Corp.*, No. 08 cv 80142 MISC (JF) (RS), 2009 WL

11   290459, at *1 (N.D. Cal. Feb. 5, 2009) (quashing subpoena for failure to tender witness fees upon

12   service); *S.F. Bay Area Rapid Transit Dist. v. Spencer*, No. 04 cv 04632 (SI), 2006 WL 2734284, at

13   *1 (N.D. Cal. Sept. 25, 2006) (quashing subpoena for failure to tender witness fees without

14   prejudice to re-service).The Subpoena is thus procedurally deficient due to, inter alia, ineffective

15   service and failing to provide reasonable time for compliance, and failure to provide required fees.

16   Therefore, pursuant to Rule 45, the Subpoena must be quashed.

17        **B.    The Subpoena Should Be Quashed Because its Scope is Unreasonable and
          Imposes an Undue Burden on a Non-Party**
18

19        15.    The motion to quash should be granted for a second compelling reason: the Subpoena

20   imposes an undue burden and hardship on non-party Mr. Bankman-Fried.  Fed. R. Civ. P.

21   45(c)(3)(A)(iv) (a court "must quash or modify a subpoena that . . . subjects a person to undue

22   burden."); *Huynh v. Wal-Mart Assocs., Inc.*, No. 18 cv 01631 (VC) (SK), 2019 WL 13221170, at *1

23   (N.D. Cal. Aug. 1, 2019) ("A court must protect a nonparty subject to a subpoena if . . . the

24   subpoena subjects a person to undue burden."); *Intermarine, LLC v. Spliethoff Bevrachtingskantoor,*

25   *B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015) ("A party or lawyer responsible for issuing and

26   serving a subpoena therefore must take reasonable steps to avoid imposing undue burden or expense

27   on a person subject to the subpoena").

28

                                                    5

16.     The Subpoena purports to require Mr. Bankman-Fried to produce forty-nine (49) categories of documents and communications within two business days.  These document requests are overbroad, disproportionate to the needs of the case, and potentially implicate Mr. Bankman-Fried's Fifth Amendment rights.  Requiring a non-party currently under criminal indictment to conduct a fishing expedition for broad categories of documents related to at least 100 affiliated entities and containing potentially privileged materials within two business days is unreasonable on its face.  This is especially true where, as here, many of the requested documents are already in the possession of the parties.

17.     Further, "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Intermarine*, LLC, 123 F. Supp. 3d at 1218–19 (internal quotations and citations omitted). In evaluating whether a subpoena imposes an undue burden, courts consider, "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re Outlaw Lab'ys, LP Litig.*, No. 18 cv 840 (GPC) (BGS), 2020 WL 6203116, at *2 (S.D. Cal. Oct. 22, 2020) (citations omitted). Additionally, "the Court may also evaluate whether the discovery sought through a Rule 45 subpoena of a nonparty is available from a party in the case." Id. at *3.

18.     The Subpoena should be quashed because it would impose an undue burden on non-party Mr. Bankman-Fried due to its overbroad scope, disproportionality given the needs of the case, requests for protected and privileged documents and communications, and requests for materials in the possession of parties to the Voyager Contested Matter.

**C.      The Subpoena Should Be Quashed Because Compliance Would Implicate Mr. Bankman-Fried's Fifth Amendment Right against Self-Incrimination**

19.     The Subpoena should be quashed for a third compelling reason: compliance with each of the document requests it contains would implicate Mr. Bankman-Fried's Fifth Amendment right against self-incrimination under the Act of Production doctrine.  This doctrine recognizes "that the act of producing documents in response to a subpoena may have a compelled testimonial aspect," in that the act "may implicitly communicate 'statements of fact,'" such as "that the papers

6

existed, were in [the producer's] possession or control, and were authentic." *See In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 528 (9th Cir. 2018) (citation omitted); *see also In re Grand Jury Subpoena*, Dated April 18, 2003, 383 F.3d 905, 909 (9th Cir. 2004) (act of producing documents may be testimonial and lead to incriminatory statements); *see generally* § 501:31 Fifth Amendment Privilege Against Self-Incrimination—Act of Producing Information May Be Privileged, Bankr. Evid. Manual § 501:31 (2022 ed.).

20.     Moreover, when a defendant must make "extensive use of the contents of his own mind in identifying the hundreds of documents responsive to the requests in the subpoena," he or she contributes to a "link in the chain" of their prosecution in violation of the Fifth Amendment privilege. *United States v. Hubbell*, 530 U.S. 27, 42-43 (2000) (internal quotation marks and citations omitted); cf. *Waymo LLC v. Uber Technologies, Inc.*, No.17-cv-00939-WHA, 2017 WL 2864854 at *2 (N.D. Cal. Jul. 5, 2017) (requiring responding party to furnish a privilege log for documents withheld based on the Fifth Amendment privilege "could be directly incriminating or at least 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.'"); *see also In re Syncor ERISA Litig.*, 229 F.R.D. 636, 649 (C.D. Cal. 2005) ("requiring defendant . . . to produce a privilege log listing responsive documents [withheld on the basis of Fifth Amendment privilege] may incriminate defendant . . . by forcing him to 'admit[ ] that the documents exist, are in his possession or control, and are authentic.'").

21.     Here, each of the document requests calls for documents that may be relevant to the Criminal Case, in which loans by and to Alameda are at issue.  Assuming, without admitting or asserting, that Mr. Bankman-Fried has custody and control over responsive documents, he cannot be compelled to reveal their existence or his possession.  In addition, the requested production would entail reviewing a large volume of material and making judgments about their responsiveness – a process that could be deemed to constitute an incriminating testimonial act in the Criminal Case. For these reasons, the Subpoena should be quashed to allow Mr. Bankman-Fried to preserve his rights under the Fifth Amendment.

NON-PARTY SAMUEL BANKMAN-FRIED'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER – CASE NO.

**D.**     **Mr. Bankman-Fried Should Be Awarded Fees and Costs for Having to Bring This Motion**

22.     When a party issues a subpoena without taking "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," the court for the district where compliance is required "must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees" on a party or attorney responsible for the failure to do so.  Fed. R. Civ. P. 45(d)(1) (emphasis added); *see also United States v. Columbia Broadcasting System, Inc*., 666 F.2d 364, 372 (9th Cir. 1982) ("[A] witness's nonparty status is an important factor to be considered in determining whether to allocate discovery costs on the demanding or the producing party"); *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc*., 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("[S]anctions are appropriate if the subpoenaing party fails to take reasonable steps to avoid imposing an undue burden on a third party"); *Black v. Wrigley*, No. 18 cv 2367 (GPC) (BGS), 2019 WL 2717212 at *9-10 (C.D. Cal. Jun. 28, 2019) (awarding sanctions including reasonable expenses for time spent preparing motion to quash). Additionally, "[w]hen a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of [Rule 45(d)(1)]."  *See Black v. Wrigley*, 2019 WL 2717212 at *5 (citing *CareToLive v. von Eschenbach*, No. 07 cv 729, 2008 WL 552431, at *3 (S.D. Ohio Feb. 26, 2008)).

23.     As demonstrated herein, the Subpoena is facially defective on multiple grounds and should not have been issued.  It was not properly served, provided a woefully insufficient time to comply, and includes overly broad and duplicative requests that stretch far beyond what is reasonable or necessary for the needs of this case.  Mr. Bankman-Fried has suffered undue burden and expense for having to respond to the Subpoena and the Court must award reasonable attorneys' fees to for the cost of this motion, or in the alternative for reasonable attorneys' fees, costs and expenses incurred in complying with the Subpoena.

8

NON-PARTY SAMUEL BANKMAN-FRIED'S MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER – CASE NO.

1

**II.   CONCLUSION**

2

    24.    For the reasons set forth above, Mr. Bankman-Fried respectfully requests that the

3

Court grant this motion to quash the Subpoena and award reasonable attorneys' fees incurred in

4

bringing this motion.

5

Dated: February 21, 2023           LEWIS & LLEWELLYN LLP

6

7

By: _____

8

        Marc R. Lewis
        Attorneys for Non-Party

9

        SAMUEL BANKMAN-FRIED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NON-PARTY SAMUEL BANKMAN-FRIED'S MOTION TO QUASH SUBPOENA OR, IN THE
ALTERNATIVE, FOR A PROTECTIVE ORDER – CASE NO.

# EXHIBIT A

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

## UNITED STATES BANKRUPTCY COURT

Southern _____ District of New York _____

In re VOYAGER DIGITAL HOLDINGS, INC., _et al._,

Debtor

_(Complete if issued in an adversary proceeding)_

Case No. 22-10943 (MEW)

Chapter 11

Plaintiff

v.

(Jointly Administered)

Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Samuel Bankman-Fried, 743 Cooksey Lake, Stanford, CA 94305-8417
_(Name of person to whom the subpoena is directed)_

X _Testimony_: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to
. be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more
officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following
matters, or those set forth in an attachment:

| PLACE: At the address designated below. | DATE AND TIME February 23, 2023 at 10:00AM |
|---|---|

The deposition will be recorded by this method:
The deposition will be recorded by video via Zoom and a stenographer. The UCC is willing to consider a deposition via Zoom.

[X] _Production_: You, or your representatives, must also bring with you to the deposition the following documents,
electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See **Exhibit A** attached hereto. Documents to be produced in advance of examination to the offices of McDermott Will & Emery LLP,
415 Mission Street, Suite 5600, San Francisco, CA 94105, or electronically to jbevans@mwe.com, by no later than **February 20, 2023**.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are
attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a
subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not
doing so.

Date: 2/15/2023

CLERK OF COURT

OR

_____
_Signature of Clerk or Deputy Clerk_

/s/ Joseph B. Evans
_____
_Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_
the Official Committee of Unsecured Creditors, who issues or requests this subpoena, are: McDermott Will & Emery LLP, Joseph B.
Evans, One Vanderbilt Avenue, New York, New York 10017, jbevans@mwe.com, (212) 547-5767

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the
inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on
the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

### (c) Place of compliance.

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii)

disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**

**DEFINITIONS**

The following definitions apply to all Requests. Unless otherwise defined herein, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common and ordinary sense.

1.      Any references to a corporation, partnership, proprietorship, association, organization, or any other business or legal entity (including any of the Debtors) shall be deemed to include the corporation's, partnership's, proprietorship's, association's, organization's, or other business or legal entity's agents, accountants, advisors, employees, attorneys, officers, directors, direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors, successors, assigns, or any other person acting or purporting to act on behalf of the corporation, partnership, proprietorship, association, organization, or other business or legal entity.

2.      The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      The terms "You," or "Your," shall mean Samuel Bankman-Fried including, as applicable, his agents, representatives, consultants, attorneys, auditors, accountants, and any other Person(s) now or heretofore under the control of the foregoing or acting or purporting to act on

1

his behalf.

6.      The term "Account(s)" means any fiat or Cryptocurrency depository, including, but not limited to any company or service that hosts or provides digital wallets or otherwise permits trading and storage of Cryptocurrency (including Cryptocurrency exchanges and Cryptocurrency custodians), checking accounts, savings accounts, trust accounts, custodian accounts, money market accounts, investment accounts, transactional accounts, certificates of deposit, safety deposit boxes, and any other holder of assets or value of any kind, including cash, securities, debt instruments, precious metals, jewelry, important documents, deeds, or any other asset or medium of exchange.

7.      The term "Alameda" refers to, collectively, Alameda Research LLC, Alameda Ventures Ltd., and each of the foregoing's subsidiary debtors in the FTX Chapter 11 Cases.

8.      The term "AlamedaFTX" means Alameda and FTX.

9.      The term "Alameda Loan Agreement" means that certain Loan Agreement, dated June 21, 2022, by and among Alameda Ventures Ltd., as lender, Voyager Digital Holdings, Inc., as borrower, and Voyager Digital Ltd, as guarantor.

10.     The term "Alameda Transaction" means the transfer of $75 million worth of crypto from Alameda Ventures Ltd. to Voyager Digital Holdings, Inc. on June 21, 2022, pursuant to the Alameda Loan Agreement.

11.     The term "Auction" means the two-week auction that commenced on September 13, 2022 in accordance with the court-approved bidding procedures. [*See* Docket Nos. 126 & 248.]

12.     The term "Binance" means BAM Trading Services Inc. d/b/a Binance.US and all

2

affiliated entities therewith.

13.     "Binance Auction Bid" means any bid submitted by Binance (i) in accordance with bidding procedures, as amended, and approved by the Court pursuant to the *Order (I) Approving the Bidding Procedures and Related Dates and Deadlines, (II) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Sale, Disclosure Statement, and Plan Confirmation, and (III) Granting Related Relief* [Docket No. 248], or (ii) at the Auction.

14.     The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, e-mail messages, text messages, chats, iMessages, Bloomberg, Telegram, WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, QQ, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, videotapes, photographs, microfilm, microfiche, magnetic disks, or other media of any kind.

15.     The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

16.     The term "Debtors" means Voyager Digital Holdings, Inc., Voyager Digital Ltd., and Voyager Digital, LLC.

17.     The term "Digital Address" means the alphanumerical sequence that identifies a digital wallet.

18.     The term "Digital Wallet(s)" means any device, program, or network address in which Cryptocurrency is stored, including hosted wallets, non-hosted wallets, multi-sig wallets, and any other place in which Cryptocurrency can be stored.

19.     The term "Documents" is defined to be synonymous in meaning and equal in

scope to the usage of the term "documents or electronically stored information" in Federal Rule

of Civil Procedure 34(a)(1)(A). For the avoidance of doubt, this may encompass all written,

graphic, or printed matter of any kind, however produced or reproduced, including all originals,

drafts, working papers, and non-identical copies, whether different from the originals by reason

of any notation made on such copies or otherwise, and all electronic, mechanical, or optical

records or representations of any kind or other data compilations from which information can be

obtained or translated, if necessary, through detection devices into reasonable usable form. The

term "Documents" includes, but is not limited to:

     a.     correspondence, memoranda, notes, calendar or diary entries, statistics,
letters, electronic mail, notebooks, telegrams, journals, minutes, agendas,
notices, announcements, instructions, charts, schedules, requests,
contracts, prospective contracts, agreements, prospective agreements,
licenses, prospective licenses, order forms, books, accounts, records,
reports, studies, surveys, experiments, analyses, checks, cancelled checks,
wire confirmations, statements, receipts, returns, vouchers, statements,
credit memoranda, sales slips, promissory notes, summaries, pamphlets,
prospectuses, manuals, brochures, announcements, certificates, drawings,
plans, inter-office and intraoffice communications, pitchbooks, marketing
materials, or offers;

     b.     any written, or electronic transmission of information without limitation,
including meetings, discussions, conversations, telephone calls, e-mail
messages, text messages, chats, iMessages, Bloomberg, Telegram,
WhatsApp, Groupme, WeChat, Signal, Dust, Slack, Proton, memoranda,
letters, analyst reports, telecopies, telefaxes, telexes, conferences,
seminars, messages, notes, videotapes, photographs, microfilm,
microfiche, magnetic disks, or other media of any kind;

     c.     notations in any form made of conversations, telephone calls, meetings,
negotiations, or other communications;

     d.     bulletins, circulars, schedules, lists, guides, printed matter (including
newspapers, magazines and other publications, articles and clippings
therefrom), press releases, computer printouts, teletypes, telecopies,
telexes, invoices, ledgers, balance sheets, financial statements, or
worksheets;

4

    e.      electronic, mechanical, or optical records or representations of any kind (including tapes, cassettes, discs, hard drives, recordings, voice mail, electronic mail, and computer-stored data or material), or transcriptions thereof; and

    f.      all drafts, alterations, modifications, changes and amendments of any of the foregoing, and any material underlying, supporting, or used in the preparation of any document.

    g.      a draft or non-identical copy is a separate document within the meaning of this term.

20.     The term "FTX" means FTX Trading Ltd. and the 101 affiliated debtors and debtors in possession in the FTX Chapter 11 Cases, including Alameda. These entities also include, but are not limited to, all parents, subsidiaries, affiliates, and partners.

21.     The term "FTX APA" means that certain Asset Purchase Agreement, dated September 27, 2022, by and between Voyager Digital, LLC, as seller and FTX US, as purchaser. [*See* Docket Nos. 472 & 548.]

22.     The term "FTX Chapter 11 Cases" means the chapter 11 cases filed by FTX that are pending in the United States Bankruptcy Court for the District of Delaware and which are being jointly administered under Case No. 22-11068. *See In re FTX Trading Ltd., et al.*, No. 22-11068 (Bankr. D. Del.).

23.     The term "FTX Public Bid" means AlamedaFTX's July 22, 2022 press release and public proposal to purchase certain assets of the Debtors. [*See, e.g.*, Docket No. 137.]

24.     The term "FTX Transaction" means the private bidding process [*see* Docket Nos. 126 & 248], the Auction, and the drafting and ultimate execution of the FTX APA.

25.     The term "FTX US" means West Realm Shires Inc.

26.     "Person" means any individual, natural person, or business entity, including, without limitation, a sole proprietorship, partnership, association, corporation, organization, joint

venture, company, or any other legal, business, formal, or informal entity, including governmental bodies and/or agencies, and any department, affiliate, joint enterprise, or representative thereof.

27.     "Petition Date" means July 5, 2022, which is the date that the Debtors initiated the Voyager Chapter 11 Cases.

28.     "Records" means all documents and communications in any way related to an Account, including emails, statements, applications, onboarding forms, communications, correspondence, know your customer/anti-money laundering related documents, SWIFT records, records reflecting transactions, checks (front and back), wire transfers, tax documents and filings, certificates of foreign status of beneficial owners, memoranda, notes, custodian agreements, trustee agreements, forms and/or related documents and communications, beneficiary agreements, forms and/or related documents and communications, and all other documents concerning the owners, signatories, beneficial owners, trustees, and all other persons associated with an Account in any way, and any other documents, communications, or bank records.

29.     The term "Share Purchase and Surrender" means the purchase or surrender of common stock of Voyager Digital Ltd. by FTX or Alameda, including, without limitation, the November 2021 purchase of 7,723,996 common shares (valued at $9.71 per share) of Voyager Digital Ltd. by Alameda Research Ltd., the May 2022 purchase of 14,957,265 common and variable voting shares (valued at $2.34 per share) of Voyager Digital Ltd. by Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC, and the disposition and surrender of 4,500,000 common and variable voting shares of Voyager Digital Ltd. with a total value of approximately $2.4 million by Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC.

30.     The term "Voyager Chapter 11 Cases" means the above-captioned jointly administered chapter 11 cases of the Debtors.

31.     The term "Voyager Loan Agreement" means that certain Master Loan Agreement, dated September 2, 2021, by and among Alameda Research Ltd., as borrower, and Voyager Digital LLC and HTC Trading, Inc., as lenders.

## INSTRUCTIONS

1.     The preceding definitions apply to these Instructions and each of the succeeding Requests.

2.     All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.     You are required to produce all responsive documents in your possession, custody, or control, wherever located, including without limitation those in the custody of your representatives, agents, Professionals, affiliates, or anyone acting on your behalf.

4.     These Requests are continuing requests pursuant to the Bankruptcy Rules. You must supplement any production of documents that are received, discovered, or created after any of your responses to the Requests, or that are otherwise within your possession, custody, or control, wherever located, including without limitation those in the custody of your representatives, agents, Professional, affiliates, or anyone acting on your behalf.

5.     If You object to any part of any Request, You must produce all documents that are responsive to the portions of the Request to which You do not object. You also must state the nature of, and grounds for, the objection.

6.     If You cannot comply with any Request in full, You must comply to the fullest extent possible, and You should provide an explanation as to why full compliance is not possible.

7

7.     Where You assert a claim of privilege in objecting to a Request and withhold a responsive document on this basis, You must provide a privilege log setting forth (a) the nature of the privilege being claimed, (b) the type of document being withheld, (c) the general subject matter of the document, (d) the date of the document, and (e) such other information sufficient to identify the document, including, where appropriate, the author of the document, the title or subject line of the document, the addressee of the document, and, where not apparent, the relationship of the author and the addressee to each other.

8.     If a document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material. If a party asserts a privilege to part of the material contained in a document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a document has been redacted or altered in any fashion, You must identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

9.     All documents produced in electronic format shall be in their native format and shall be OCR (Optical Character Recognition) capable and shall be produced with Relativity compatible load files.

10.     Additional special processing of certain electronically stored information shall be as follows: Microsoft Excel spreadsheet fields shall not be converted to TIFF files and shall be produced in native format. A placeholder TIFF image shall be created, Bates numbered, and the produced Excel file shall be renamed to match the Bates number on its corresponding placeholder page. The exception shall be for redacted spreadsheets which shall be produced in

TIFF format. Images for the redacted spreadsheets shall display the content in the same manner as if it were printed. The extractable metadata and text shall be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

11.     If any document called for by these Requests has been destroyed or discarded, You must identify that document in writing by providing the following information: (a) any sender/author and any addressee; (b) any indicated or blind copies; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown, or explained; (e) its date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (f) the persons who authorized and carried out such destruction or discard; and (g) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

12.     Any copy of a document that varies in any way whatsoever from the original or from any other copy of the document, whether by reason of any handwritten mark or other notation or any omission, is a separate document and must be produced, whether or not the original of such a document is within your possession, custody, or control. A request for any document includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each document is to be produced in its entirety, without abbreviation or expurgation.

13.     In producing documents, all documents that are physically attached to each other, or segregated or separated from other documents, when originally located, should be produced as is. If no document exists that is responsive to a particular request, You must state so in writing.

14.     Except where otherwise specified, the Document Requests seek documents dated, created, or otherwise obtained on or between September 1, 2021, and the present (the "Relevant

Period").

## <u>REQUESTS</u>

1.       All Documents, Communications, electronic messages, or other data concerning the Alameda Loan Agreement, the Alameda Transaction, the FTX Transaction, the FTX Public Bid, the Voyager Loan Agreement, or the Share Purchase and Surrender.

2.       All Documents, Communications, electronic messages, or other data concerning whether Alameda or You expected the Debtors to repay any funds drawn down under the terms of the Alameda Loan Agreement and the Alameda Transaction.

3.       All Documents, Communications, including text or electronic messages, scripts, notes, press release drafts, or other data, concerning Your statement on August 10, 2022, that You did not expect the funds drawn down by the Debtors pursuant to the Alameda Loan Agreement and the Alameda Transaction to be paid back. *See, e.g.*, Stacy Elliot and Daniel Robert, *Sam Bankman-Fried: Voyager Deal Likely '$70M Down the Drain*,' DECRYPT (Aug. 10, 2022), https://decrypt.co/107143/sam-bankman-fried-voyager-deal-likely-70m-down-the-drain.

4.       All Documents, Communications, including text or electronic messages, scripts, notes, press release drafts, or other data, concerning Alameda's statement on Twitter on July 7, 2022, that Alameda was "happy to return the Voyager loan and get our collateral back whenever works for voyager." *See* @AlamedaResearch, TWITTER (July 7, 2022, 11:12 PM), https://twitter.com/AlamedaResearch/status/1545244404910239744/.

5.       All Documents, Communications, including text or electronic messages, scripts, notes, press release drafts, or other data, concerning Your statement on Twitter on September 30, 2022, that $1.3 billion of the FTX Transaction was being passed back to customers. *See* @SBF_FTX, TWITTER (Sept. 30, 2022, 9:18 AM),

10

https://twitter.com/SBF_FTX/status/1575837468846194688?cxt=HHwWgICgpYX1v94rAAAA.

6.    All Documents, Communications, including text or electronic messages, scripts, notes, press release drafts, or other data, concerning Your statement on Twitter on October 2, 2022, that "in Voyager [and the FTX Transaction], our bids are generally determined by fair market price, no discounts; goal isn't to make money buying assets at cents on the dollar, it's to pay $1 on the $1 and get the $1 back to customers." *See* @SBF_FTX, TWITTER (Oct. 2, 2022, 1:06 PM),

https://twitter.com/SBF_FTX/status/1576619657561133058?cxt=HHwWhMCirbXOo-ErAAAA.

7.    All Documents and Communications concerning whether AlamedaFTX would be repaid under the terms of the Alameda Loan Agreement and the Alameda Transaction, including any notes, drafts, scripts, prepared remarks, or other similar documents concerning public statements indicating that AlamedaFTX would not be repaid.

8.    All Documents concerning AlamedaFTX's efforts to provide funding to any non-Debtor entities or counterparties, including, without limitation, credit agreements, financing agreements, and/or loan agreements.

9.    All Documents and Communications concerning whether AlamedaFTX was making payments in the ordinary course of business to repay debts owed by AlamedaFTX to its lenders or other contractual counterparties.

10.    All Documents, Communications, memoranda, notes, electronic messages, or other data from any interview conducted by the Department of Justice in connection with the FTX Chapter 11 Cases.

11.    All Documents, Communications, text, or electronic messages, or other data

11

concerning Voyager Digital Holdings, Inc.'s ability to meet its obligations under the Alameda
Loan Agreement and the Alameda Transaction, including any analysis of Voyager Digital
Holdings, Inc.'s financial condition, solvency, capitalization, assets, liabilities, and liquidity.

12.     All Documents, Communications, text, or electronic messages, or other data
concerning FTX's or Alameda's financial condition, solvency, capitalization, assets, liabilities,
and liquidity prior to the execution of the Alameda Loan Agreement and the Alameda
Transaction.

13.     All Documents and Communications concerning the Share Purchase and
Surrender, the Alameda Loan Agreement, the Alameda Transaction, the Voyager Loan
Agreement, and/or any potential purchase of the Debtors by AlamedaFTX leading up to the FTX
Public Bid, the Auction, or the FTX Transaction.

14.     All Documents and Communications concerning the Share Purchase and
Surrender, the Voyager Loan Agreement, the Alameda Loan Agreement, the FTX APA, the FTX
Transaction, the FTX Public Bid, and the Alameda Transaction, including any meeting minutes,
notes, memoranda, chats, text or other messages, talking points, or other analysis.

15.     All Documents and Communications concerning other bids submitted as part of
the FTX Transaction.

16.     All Documents, Communications, text, or electronic messages, or other data
exchanged between You and Rahul Sharma, Rozalie Czesana, and/or Dan Friedberg relating to
the FTX Transaction.

17.     All Documents and Communications concerning any statements You made to the
press or media in connection with the FTX Public Bid, the FTX Transaction, the Auction, and
Binance.

18.   All Documents and Communications concerning Your decision to resign from Your positions at any of the AlamedaFTX entities.

19.   All Documents and Communications, including text or electronic messages, between You and any of the following individuals concerning the Share Purchase and Surrender, the Voyager Loan Agreement, the Alameda Loan Agreement, the Alameda Transaction, the FTX Public Bid, the FTX Transaction, or the Voyager Chapter 11 Cases:

    a.    Barbara Fried;

    b.    Brett Harrison;

    c.    Can Sun;

    d.    Caroline Ellison;

    e.    Claire Watanabe;

    f.    Constance Wang;

    g.    Daniel Friedberg;

    h.    George Lerner;

    i.    Jen Chan;

    j.    Joseph Bankman;

    k.    Nathaniel Parke;

    l.    Nishad Singh;

    m.    Ramnik Arora;

    n.    Ryan Salame;

    o.    Ryne Miller;

    p.    Samuel Trabucco; and

    q.    Zixiao "Gary" Wang.

20.     All Documents and Communications concerning AlamedaFTX's and/or Your knowledge of the Debtors' financial condition, solvency, capitalization, assets, liabilities, and liquidity at the times that the Alameda Loan Agreement, the Voyager Loan Agreement, the Alameda Transaction, the FTX Public Bid, the FTX APA, and the FTX Transaction were executed, including Documents and Communications about customer redemptions and other loans becoming due.

21.     All Documents and Communications to Sullivan & Cromwell concerning AlamedaFTX's financial condition.

22.     All Documents and Communications to Moelis & Company LLC concerning AlamedaFTX's financial condition.

23.     All Documents and Communications concerning Alameda's and/or FTX's potential acquisition of the Debtors.

24.     All Documents and Communications concerning recalling the Alameda Loan Agreement, including the reasons why the Alameda Loan Agreement was not recalled prior to the Petition Date.

25.     All Documents and Communications concerning Alameda's repayment of any loans under the Voyager Loan Agreement.

26.     All Documents, Communications, text, or electronic messages, or other data concerning the FTX Public Bid.

27.     All Documents, Communications, text, or electronic messages, or other data concerning FTX's financial condition, solvency, capitalization, assets, liabilities, and liquidity prior to and during the FTX Public Bid.

28.     All Documents, Communications, text, or electronic messages, or other data

14

concerning the FTX Transaction.

29. All Documents, Communications, text, or electronic messages, or other data concerning FTX's financial condition, solvency, capitalization, assets, liabilities, and liquidity prior to and during the FTX Transaction.

30. All Documents, Communications, text, or electronic messages, or other data that support the Representations and Warranties of Purchaser in Article IV, Section 4.4 of the FTX APA that "Purchaser has, and will have at the Closing, sufficient funds in an aggregate amount necessary to pay the Cash Payment, Acquired Cash Payment and the Cryptocurrency Consideration, to perform the Assumed Liabilities as they become due in accordance with their terms and to consummate all of the other Transactions. Purchaser is and shall be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts and the related Assumed Liabilities."

31. All Documents, Communications, text, or electronic messages, or other data that support the Representations and Warranties of Purchaser in Article IV, Section 4.5 of the FTX APA, including that, "To the Knowledge of Purchaser, as of the date of this agreement, no facts or circumstances exist that would reasonably be expected to impair or materially delay the ability of Purchaser to consummate the transactions contemplated by this Agreement" and that "Purchaser is not in violation of any Laws or Orders applicable to the conduct of its business, except for violations the existence of which would not reasonably be expected to prevent, materially impair or materially delay the ability of Purchaser to consummate the Transactions."

32. All Documents concerning Your knowledge of the Binance Auction Bid.

33. All Documents concerning AlamedaFTX's proofs of claim filed in the Voyager Chapter 11 Cases.

15

34.     All Documents, Communications, text, or electronic messages, or other data concerning Your efforts to raise capital during the Relevant Period, including, without limitation, through consummated or contemplated debt or equity financing, or through any sale, equity investment, private placement, initial public offering, loan, or recapitalization.

35.     All Documents, Communications, text, or electronic messages, or other data concerning the Auction and internal bidding discussions at FTX prior to, during, and after the Auction.

36.     All Documents concerning any assets of AlamedaFTX or any of their respective customers or other creditors, or any funds, fiat currency, Tokens, or other digital assets, or other items of value transferred by, to, or from, or encumbered by any AlamedaFTX entity.

37.     All Documents, Communications, text, or electronic messages, or other data concerning AlamedaFTX's business operations and financial performance.

38.     All Documents sufficient to identify all Accounts, including bank accounts, depository accounts, payment process service accounts, brokerage accounts, or cryptocurrency exchange accounts, owned, controlled by, or used by anyone working on behalf of, or held in the name of or for the benefit of, any AlamedaFTX entity.

39.     All Documents, Communications, text, or electronic messages, or other data concerning any audit of AlamedaFTX.

40.     All Documents reflecting public addresses of any Wallet held by You, AlamedaFTX, or anyone associated with any of the AlamedaFTX entities.

41.     All Communications between You and the following individuals concerning the Share Purchase and Surrender, the Voyager Loan Agreement, the Alameda Loan Agreement, the Alameda Transaction, the FTX Public Bid, the FTX Transaction, or the Voyager Chapter 11

Cases:

     a.    Stephen Ehrlich;

     b.    Evan Psaropolous;

     c.    Phillip Eytan;

     d.    Jon Brosnahan;

     e.    Brian Silard;

     f.    David Brosgol;

     g.    Ashwin Prithipaul;

     h.    Manisha Lalwani;

     i.    Ryan Whooley;

     j.    Gerard Hanshe;

     k.    Marshall Jensen;

     l.    Pam Kramer;

     m.    David Brill; and

     n.    Brian Nistler.

42.    All Communications between You and the following professionals concerning Share Purchase and Surrender, the Voyager Loan Agreement, the Alameda Loan Agreement, the Alameda Transaction, the FTX Public Bid, the FTX Transaction, or the Voyager Chapter 11 Cases:

     a.    Moelis & Company LLC;

     b.    Kirkland & Ellis;

     c.    Berkeley Research Group, LLC;

     d.    Armanino LLP;

17

      e.     Prager Metis; and

      f.     Sullivan & Cromwell.

43.     All Communications between You and any auditors or accountants concerning AlamedaFTX's financial condition, solvency, capitalization, assets, liabilities, and liquidity at the times that the Alameda Loan Agreement, the Alameda Transaction, the FTX Public Bid, and the FTX Transaction were executed.

44.     All Documents and Communications between You and the law firm Paul, Weiss, Rifkind, Wharton & Garrison concerning their decision to terminate their representation of You.

45.     All Documents concerning the corporate structure, corporate governance policies or practices, corporate formalities, or appointment and or removal of officers and directors of any of the AlamedaFTX entities.

46.     All Documents, Communications, text, or electronic messages, or other data concerning Your control, influence, or role at Alameda.

47.     All Documents, Communications, text, or electronic messages, or other data concerning FTX's risk management and automated liquidation systems, processes, and policies, including all Documents and Communications concerning how those systems, processes, and policies applied or did not apply to Alameda.

48.     All Documents concerning any attempts to procure funding or debt or equity investments for any or all AlamedaFTX entities.

49.     All Communications between You and any person affiliated with the FTX entities, John Ray, or any person affiliated with Sullivan & Cromwell between August 1, 2022, and the present.

18